i
 
 statement of the case
 

 CLARENCE E. McMANUS, Judge.
 

 Mel and Karen Vollenweider (“the Vol-lenweiders”) suffered flood damage to their home, located at 4733 Avron St. in Metairie, LA, as a result of Hurricane Katrina. The Vollenweiders contracted with Helwig Construction Company (“Hel-wig”) for the demolition of the damaged flooring, sheetrock and other materials in the house. This demolition work was completed and the Vollenweiders paid the total amount due on the demolition contract.
 

 Thereafter, the Vollenweiders executed a Close Walls Contract with Helwig for certain repair work to the home. This contract did not include the installation of flooring. Extra repair items were later added to the contract, represented in a list on the Final Bill, including the installation of owner supplied wood flooring at $3.00 per square foot, for a total cost of $3,185.00. The Vollenweiders purchased the hard wood flooring materials from Lumber Liquidators. Helwig hired Rene Portillo of Gulf Coast Resurfacing as a subcontractor to install the wood flooring purchased by the Vollenweiders.
 

 Approximately thirty days after the wood flooring was installed, the Vollen-weiders observed the wood flooring cupping and buckling. Mel Vollenweider contacted Rick Helwig to inspect the problem. Helwig acknowledged that something was wrong, however, the Vollenweiders contend nothing , further was done to correct the problem.
 

 ^Thereafter, the Vollenweiders hired William Summers, an expert in hard wood flooring installation and testing. Summers examined the flooring and determine that it must be removed. He tested the floor and found the moisture content level coming from the concrete slab was high. He found this moisture was the reason the floors had cupped and buckled. Summers concluded that a moisture barrier must be installed to prevent this problem. The
 
 *188
 
 Vollenweiders then had the buckled wood floor removed and they purchased new wood flooring that was installed by a different contractor.
 

 On August 21, 2007, the Vollenweiders filed a petition for damages against Helwig Construction, alleging Helwig’s repair and replacement of the wood floors was completed in a defective, unworkmanlike and unacceptable manner because Helwig failed to place a moisture barrier beneath the wood floor. The Vollenweiders alleged they had to hire another contractor to demolish the defective flooring and reinstall new flooring, and incurred additional expenses for moving furniture because of these defects. The Vollenweiders further alleged Helwig damaged the leg of their pool table, which required repair. Finally, the Vollenweiders alleged Helwig violated the Louisiana Residential Lien Law, as well as the Federal Fan Debt Collection Act, when the company placed a lien on the residence for the amount not paid on the contract.
 

 Helwig
 
 filed
 
 an answer and reconven-tional demand on October 3, 2007 alleging the Vollenweiders still owed $24,230.00 for labor, services and materials pursuant to then contract. The Vollenweiders answered the reconventional demand on October 11, 2007 admitting that Helwig had made some repairs and provided certain materials, however, the Vollenweiders claimed the work was not performed in a proper and workmanlike fashion and the work was defective, requiring remediation at substantial additional costs.
 

 LA bench trial was held on March 5, 2009. The trial court issued a judgment April 14, 2009 awarding the Vollenweiders $11,654.95, plus interest and costs. The trial court further found the Vollenweiders were not entitled to $1,000.00 for demolition fees, nor damages for the lien. The trial court also dismissed Helwig’s recon-ventional demand, without reasons.
 

 Helwig now appeals the trial court’s judgment. The Vollenweiders have filed an answer to the appeal. For the reasons which follow, we affirm in part and reverse in part, and amend the trial court’s judgment.
 

 DISCUSSION
 

 On appeal, Helwig argues the trial court erred in concluding that it improperly installed the wood floor and damaged the pool table. Helwig argues the trial court erred in rendering a money judgment in favor of the Vollenweiders and dismissing its reconventional demand.
 

 The Vollenweiders have answered the appeal and argue the trial court’s judgment should be affirmed finding they are entitled to damages from Helwig for the improperly installed wood floors and damaged pool table. They also argue the trial court should have awarded them attorney fees and penalties under the Louisiana Lien Law and the Federal Fair Debt Collection Act.
 

 A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong.
 
 Stobart v. State, through Dept. of Trans. and Development,
 
 92-1328, (La.4/12/93), 617 So.2d 880. The Louisiana Supreme Court has set forth a two-part test for the reversal of a factfinder’s determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
 
 Id.
 
 This test dictates that a reviewing court |r,must do more than simply review the record for some evidence which supports or controverts the trial court’s finding.
 
 Id,.
 
 The
 
 *189
 
 reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
 
 Id.
 

 First, we agree with the trial court and find the Vollenweiders are entitled to damages for the demolition and replacement of the wood floors installed by Helwig, through the subcontractor, Rene Portillo of Gulf Coast Resurfacing. Mr. Vollenweider testified at trial that about thirty days after the wood flooring was installed, he noticed the wood started buckling up about six inches. Mr. Vollen-weider contacted Rick Helwig, who came immediately, saw the wood, and said “something is wrong.” Mr. Vollenweider claimed there was complete cupping throughout every room where the hardwood floors had been installed by Helwig. Mr. Vollenweider further testified that the wood in the master bedroom was about six to seven inches off the concrete and the bedroom door could not be opened or shut.
 

 Rick Helwig testified that he received notice from Mr. Vollenweider regarding the problem with the floor. He went to the home and observed the floor in the back bedroom buckled against the rear wall. Helwig believed that the problem was caused by the floors not being acclimated because the Vollenweiders had not left the air conditioner on to regulate the temperature, or that there was a water leak in the bathroom behind the bedroom.
 

 Rene Portillo, the subcontractor that installed the wood flooring for Helwig, also testified that he went to the Vollenweiders’ home and saw a big buckle right by the door frame in the bedroom where there is a bathroom. He performed a chloride test to determine the moisture content of the slab. According to Portillo, the test indicated the moisture levels were low enough that a moisture barrier was | finot required. Portillo further testified that prior to installing the wood floors, he performed a moisture test on the concrete slab, which involved placing a piece of visquene onto the slab and covering it with duct tape for a couple of days. Portillo testified that if there was moisture on the visquene, then there was moisture in the slab and a moisture barrier must be installed. But, he stated if there was no moisture on the visquene, then no moisture barrier was necessary. Portillo testified that the moisture test he performed on the Vollenweid-ers’ residence was negative, therefore, he did not install a moisture barrier.
 

 At trial, the Vollenweiders presented the deposition testimony of their expert, William Summers, who was qualified as an expert in hard wood flooring installation and testing. He tested the floors and found the moisture levels were in excess of tolerable levels. Summers found the moisture was coming from the concrete slab and the moisture caused the cupping of the wood floors. Summers stated he was not surprised by the moisture readings, considering the home sat in fourteen inches of water for several days. He found Helwig failed to install a moisture barrier, which would have prevented this problem from occurring. According to Summers, good practice demanded some form of moisture barrier be installed, considering the fact that the home was flooded. Summers’ expert opinion was that the floors cupped and buckled due to moisture from, the concrete slab.
 

 Helwig presented no evidence to dispute the fact that the floors did cup and buckle, or to dispute the expert testimony of Summers that this problem occurred because of moisture in the slab and the fact that no moisture barrier was installed. Thus, we find Helwig responsible for the damage to the wood floors which resulted from failure to install a moisture barrier and find the
 
 *190
 
 Vollenweiders are [ 7entitled to damages for the costs to remove and replace the wood floors that were damaged as a result of the moisture buckling the wood floors.
 

 At trial, the Vollenweiders submitted invoices and estimates representing the amount spent to demolish the defective floors, and replace and install the new wood floors. The new flooring material cost $6,507.55 at Lumber Liquidators. The Vollenweiders also had to pay $1,800.00 to Install Service Unlimited for the removal and reinstallation of all baseboards and quarter round molding. Demolition costs for the removal of the damaged wood floors totaled $2,881.00, which was paid to Charlie Maestri’s Carpet & Furniture. And finally, an inspection, costing $325.00, was performed. In their post-trial memorandum, the Vollenweiders claimed they were entitled to $15,878.55 in total costs for the demolition, partial replacement and reinstallation of the wood floors. However, they did not present estimates or invoices for the labor required to replace the wood floors.
 

 In their post-trial memorandum submitted to the trial court, the Vollenweiders referred to the amount Helwig originally charged to install the wood floors and sought to use this amount of approximately $3,185.00 as proof of the costs to reinstall the wood floors, in addition to $1,230.00 to finish or install the self-leveling underlay. Testimony was presented that the Vollenweiders had to pay to have the wood floors installed a second time, with new materials. However, they did not present an invoice or estimate to the trial court at trial to prove the amount of these costs.
 

 We also find the Vollenweiders are entitled to damages for the broken pool table leg. Vollenweider testified at trial that the pool table was in immaculate condition with no broken leg when Helwig’s employees first came to his home. He testified that he did not move the table, but when he came downstairs one day, |8the table had been moved. He testified there were three people working on that day and that is not enough people to lift the table. Thus, he believed it had been pushed across the floor, causing damage. Vollenweider further testified that the only other people that would come over to the house were his parents, who were each over 70 years old and could not move the table. Later, when Vollenweider and others attempted to move the table to another room by lifting it, he noticed the leg was broken.
 

 The Vollenweiders submitted a receipt at trial from Bee’s Amusement in the amount of $715.00 for the repair of the pool table. We find the evidence presented indicates Helwig was responsible for the damage to the pool table, therefore, the Vollenweiders are entitled to $715.00 for repairs to the pool table.
 

 In accordance with the above, we find the trial court correctly found in favor of the Vollenweiders and awarded damages for the demolition and replacement of the wood floors and damage to the pool table. However, we must disagree with the amount of damages awarded by the trial court. First, we note we are unable to discern how the trial court arrived at the award of $11,654.95, or what costs are encompassed in such an award. No reasons for judgment or further explanation of the damage award was provided by the trial court. We have reviewed the evidence and testimonies presented at trial and now amend the judgment and award the Vollenweiders $12,178.55 in damages for the demolition and reinstallation of the wood floors and damage to the pool table. This award includes $6507.55 for the wood flooring and supplies purchased from Lumber Liquidators, $1,800.00 for the re
 
 *191
 
 moval and reinstallation of baseboards and quarter round by Installation Services Unlimited, $2,831.00 for the removal of the damaged wood flooring by Charlie Maes-tri’s Carpet and Furniture, $325.00 for an inspection by All Flooring Inspections, and $715.00 for the pool table repairs by Bee’s Amusement.
 

 |9Next, the Vollenweiders contend they are entitled to penalties for Helwig’s filing of the lien on their property. On April 16, 2007, Vance Ott, counsel for Hel-wig, sent correspondence to the Vollen-weiders indicating they had failed to pay the amount owed to Helwig for labor and materials provided, therefore, he had filed a hen affidavit in the property records of Jefferson Parish. A copy of the lien affidavit was attached to the letter. Counsel for Helwig further advised in the letter that he would file suit on behalf of Helwig to seek preservation of the lien and recovery of all amounts owed if he did not hear from the Vollenweiders within ten days. The lien affidavit indicates it was filed in the mortgage records of Jefferson Parish on April 11, 2007. The affidavit further indicates a balance due by the Vollenweid-ers of $24,230.00.
 

 In response to this lien affidavit, the Vollenweiders instituted this instant action against Helwig. The Vollenweiders allege Helwig improperly placed the lien on their property in violation of LSA-R.S. 9:4852. They claim this lien caused distress, fear for the integrity of his residence and his credit rating, therefore, they claim they are entitled to penalties pursuant to LSA-R.S. 9:4855.
 

 The Vollenweiders further alleged Hel-wig violated the provisions of the Federal Fair Debt Collection Act of 15 U.S.C. 1692(e)(ll) and (g). The Vollenweiders contend the letter sent by Helwig fails to disclose that it is from a debt collector and he is attempting to collect a debt. They further contend that Helwig’s counsel did not send written notice containing specific information in accordance with 15 U.S.C. 1692(g) within five days of the initial letter. The Vollenweiders sought penalties for these alleged violations by Helwig.
 

 LSA-R.S. 9:4852 provides that prior to or at the time of entering into a contract for residential home improvements, the contractor shall deliver to the owner or his authorized agent, for the owner’s signature, written notice of lien | inrights in substantially the form included in the statute. The Vollenweiders contend they never received such notice. As a result of this failure, the Vollenweiders contend they are entitled to penalties of reasonable damages and attorney fees pursuant to LSA-R.S. 9:4855.
 

 We agree with the trial court and find that the Vollenweiders are not entitled to penalties. This statute requires a contractor to provide written notice of lien rights to the homeowner prior to entering into a contract. The Vollenweiders have not provided sufficient evidence to show that Hel-wig failed to provide this notice. Additionally, they have not proven they suffered any damages as a result of the filing of this lien affidavit by Helwig. Therefore, we will not disturb the trial court’s finding that the Vollenweiders are not entitled to damages pursuant to any alleged violation of this statute.
 

 Additionally, we agree with the trial court that the Vollenweiders are not entitled to damages under the Federal Fair Debt Collection Act. We do note, and agree with Helwig, that a claim pursuant to this statute was not raised in the Vollen-weiders’ petition for damages. The first mention of a claim under the Federal Fair Debt Collection Act was in the Vollenweid-ers’ statement of the case in the pre-trial order. Therefore, we find this claim was
 
 *192
 
 not specifically pled by the Vollenweiders and thus, the trial court correctly found they are not entitled to any damages pursuant to this statute.
 

 Finally, we have reviewed Helwig’s re-conventional demand seeking payment for the outstanding contract price and find the trial court erred in dismissing Helwig’s reconventional demand. Until the problem with the wood floors was noted by the Vollenweiders, Helwig had performed the work indicated in the “Close Wall Contract”. There were minor disputes as to certain charges in the “Extras” section included in the Final Bill. However, neither party disputes |nthat work was performed by Helwig or that the Vollenweid-ers never paid the remaining amount of the final bill. Helwig’s reconventional demand clearly seeks the remaining contract payment.
 

 The Vollenweiders claim Helwig’s reconventional demand was properly denied because the work performed under the contract was performed in a defective, substandard, and unworkmanlike manner. However, aside from the problems with the wood floor installation, no other major problems were noted by the Vollenweiders. There were no other complaints regarding the quality of the work performed by Hel-wig. Helwig testified that his company attempted to complete certain items after being notified of the wood floor problem, but the Vollenweiders would not allow them entry to the residence.
 

 The final bill presented to the Vollen-weiders from Helwig indicated a balance due of $24,230.00. This amount represented $7,950.00 remaining due on the original contract and $16,280.00 due on the extras added to the contract. Notations made by Rick Helwig indicate the charges for plumbing fixtures in the amount of $175.00 and an electrical service call in the amount of $250.00 were taken off the bill, leaving a balance of $23,805.00. Helwig also agreed to pay for a broken ceiling fan in the amount of $51.00. Therefore, the total due was $23,754.00. There were also notations on the bill indicating the demolition of the existing ceramic tile was included in the demolition contract. However, the trial testimony indicated this demolition work was not anticipated in the original demolition contract because at that time the Vol-lenweiders were keeping the ceramic tiles. Only later did they decide to remove the ceramic tile, thus, the demolition of the ceramic tile was added to the final bill as an “Extra”. Thus, the trial court correctly found the Vollenweiders are not entitled to $1,000.00 for | ^demolition fees. This amount constitutes part of the final bill owed by the Vollenweiders.
 

 We do note however, the final bill of Helwig also included a charge for $3,185.00 for installation of the hard wood floors. Since we have found those wood floors were not properly installed and the Vollen-weiders are entitled to damages for the extra costs associated with the demolition and reinstallation of the wood floors, we also find Helwig is not entitled to payment for the original wood floor installation of $3,185.00.
 

 We find the trial court erred in dismissing Helwig’s reconventional demand and finding the Vollenweiders did not owe the remaining amount due on the contract with Helwig. Therefore, based on the testimony and evidence produced at trial, we find the Vollenweiders owe Helwig $20,569.00, pursuant to their close wall contract and we find the trial court erred in not granting Helwig’s reconventional demand for this amount.
 

 Accordingly, we affirm the trial court’s judgment in favor of the Vollenweiders, but amend the judgment to award the Vollenweiders $12,178.55 in damages for
 
 *193
 
 the replacement of the wood floors and damage to the pool table. We affirm the trial court’s judgment finding the Vollen-weiders are not entitled to damages for Helwig’s filing of the lien on the property. However, we reverse the trial court’s judgment in part and grant Helwig’s reconven-tional demand for payment on the amount due pursuant to the contract with the Vol-lenweiders and award $20,569.00 to Helwig for this claim.
 

 AMENDED IN PART; REVERSED IN PART.